(SPACE BELOW FOR FILING STAMP ONLY)

MARK A. CAMPBELL (SB#93595)
J. DOUGLAS DURHAM (SB# 153476)
**MURPHY, CAMPBELL, GUTHRIE & ALLISTON**
8801 Folsom Boulevard, Suite 230
Sacramento, CA  95826

Telephone: (916) 400-2300
Fax: (916) 400-2311

Attorneys for Defendant
Steve Polan

# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| PINK LOTUS ENTERTAINMENT, LLC, | Case No. 2:11-cv-3073 WBS-KJN |
| Plaintiff(s), | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT POLAN'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| JOHN DOE AND STEVE POLAN, | |
| Defendant(s). | |
| | **DATE:        01/28/2013** |
| | **TIME:        2:00 P.M** |
| | **COURTROOM:  5, 14th Floor** |

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................3

III. STATEMENT OF ISSUES TO BE DECIDED ..................................................5

IV. LEGAL  ARGUMENT...........................................................................................6

  A.  PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED………………………………………….6

    1.     PLAINTIFF'S NEGLIGENCE CLAIM IS PREEMPTED BY THE COPYRIGHT ACT.........................................................................................................................7

      A.  Plaintiff's Claim is Within the Subject Matter of Copyright.....................................8

      B.  Plaintiff Seeks to Protect Rights Identical to the §106 Exclusive Rights ...............9

      C.  Preemption Under Conflict and Field Preemption Doctrines...............................11

    2.  PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY CDA §230 IMMUNITY. .......12

    3.     PLAINTIFF CANNOT ESTABLISH THE DUTY ELEMENT OF A NEGLIGENCE CAUSE OF ACTION ...........................................................................................17

    4.     PLAINTIFF'S DUTY ASSERTIONS FAIL UNDER *IQBAL* & *TWOMBLEY* ..........19

    5.     OTHER DISTRICT COURTS REJECT PLAINTIFF'S NEGLIGENCE THEORY .20

IV.  CONCLUSION.....................................................................................................21

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

# TABLE OF AUTHORITIES

## CASES

*AF Holdings, LLC v. John Doe and John Boston*
  California Northern District Case No. 5:12-CV-02048-EJD .......................................21, 22

*AF Holdings, LLC v. John Doe and Josh Hatfield*
  Califoria Northern District Case No. C 12-2049 PJH .................................................21, 22

*Artiglio v. Corning Inc.*
  18 Cal.4th 604 (1998)................................................................................................17

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..............................................................................6, 19, 20

*Barrett v. Rosenthal*
  40 Cal.4th 33 (2006).................................................................................................15

*Bell Atlantic v. Twombley*
  550 U.S. 544 (2007) ..............................................................................6, 19, 22

*Blumenthal v. Drudge*
  992 F.Supp. 44 (D.D.C.1998) ...........................................................................16

*Bridgeport Music, Inc. v. 11C Music, et. al.*
  154 F.Supp.2d 1330 (M.D. Tenn., 2001) .......................................................11

*Capital Cities Cable, Inc. v. Crisp*
  467 U.S. 691(1984) ..........................................................................................12

*Carafano v. Metrosplash.Com, Inc.*
  339 F.3d 1119 (9th Cir. 2003) .........................................................................15

*Davidson v. City of Westminster*
  32 Cal.3d 197 (1982).........................................................................................18

*Del Madera Properties v. Rhodes and Gardner, Inc.*
  820 F.2d 973 (9th Cir. 1987) ...........................................................................10

*Delfino v. Agilent Technologies, Inc.*
  52 Cal.3d 376 (6th Dist. 2007)...........................................................14, 15, 16

*Dielsi v. Falk*
  916 F.Supp. 985 (C.D. Cal. 1996) ...................................................................10

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

*Doe II v. MySpace, Inc.*
  175 Cal.App.4th 561(2nd Dist. 2009) ................................................................. 15

*Doe v. America Online, Inc.*
  783 So.2d 1010 (Fla. 2001) ................................................................................ 15

*Drum Major Music v. Young Money Entertainment*
  2002 WL 423350 (S.D.N.Y. Feb. 7, 2012) ......................................................... 11

*Felix the Cat Productions v. New Line Cinema*
  2000 WL 770481 (C.D. Cal. April 28, 2000) ...................................................... 10

*Firoozye v. Earthlink Network*
  153 F.Supp.2d 1151 (N.D. Cal. 2001) .............................................................. 7, 8

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*
  713 F.Supp.2d 215 (S.D.N.Y. 2010) .................................................................. 11

*Gentry v. eBay, Inc*
  99 Cal. App. 4th 816 (4th Dist. 2002). .............................................................. 14

*Hishion v. King & Spalding*
  467 U.S. 69 (1984) ............................................................................................... 6

*Johnson v. Mammoth Recreations, Inc.*
  975 F.2d 604 (9th Cir. 1992) ................................................................................ 4

*Kathleen R. v. City of Livermore*
  87 Cal.App.4th 684 (1st Dist. 2001) ...................................................... 14, 15, 16

*Liberty Media Holdings v. Swarm*
  District of Hawaii, Case No. 11-00262-DAE-RLP ............................................. 20

*Liberty Media Holdings, LLC v Cary Tabora*
  Southern District of New York, Case No. 12 Civ. 2234 (LAK) ..................... 21, 22

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*
  416 F.3d 940 (9th Cir. 2005) ................................................................................ 6

*Malibu Media, LLC v. John Does 1 through 10*
  Central District of California, Case No. 2:12-cv-3623 – ODW ............................ 3

*Marvullo v. Gruner + Jahr AG & Co.*
  2001 WL 40772 (S.D.N.Y. Jan. 17, 2001) ......................................................... 11

*McGlinchy v. Shell Chem. Co.*
  845 F.2d 802 (9th Cir. 1988) ................................................................................ 6

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Minch v. California Highway Patrol*
  140 Cal.App.4th 895 (3rd Dist. 2006) ........................................................ 18, 19

*Moss v. U.S. Secret Service*
  572 F.3d 962 (9th Cir. 2009) ................................................................. 6

*Robertson v. Dean Witter Reynolds, Inc.*
  749 F.2d 530 (9th Cir. 1984) ................................................................. 6

*Rosciszewski v. Arete Associates*
  1 F.3d 225 (4th Cir. 1993) .................................................................... 7

*Smith v. Intercosmos Media Group, Inc.*
  2002 WL 31844907 (E.D. La. Dec. 17, 2002) ................................................ 13

*Valdez v. J. D. Diffenbaugh Co.*
  51 Cal. App. 3d 494 (4th Dist. 1975) ........................................................ 19

*Watermark Publishers v. High Tech. Sys.*
  1997 U.S. Dist. LEXIS 22512 (S.D. Cal. Jun 18, 1997) .................................... 10

*Weirum v. RKO General, Inc.*
  15 Cal.3d 40 (1975) ........................................................................... 17

*Zeran v. America Online, Inc.*
  129 F.3d 327 (4th Cir. 1997) .............................................................. 13, 15

**STATUTES**

17 U.S.C. §102 ......................................................................................... 8, 11

17 U.S.C. § 301 ........................................................................................... 7

17 U.S.C. §106 ............................................................................................. 9

47 U.S.C. §230…………………………………………………………………...13, 14, 15, 16

Federal Rule of Civil Procedure 11 ............................................................ 5, 22

Federal Rule of Civil Procedure 12 ........................................................ 6, 7, 11, 19

Federal Rule of Civil Procedure 16 .................................................................. 4

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

## OTHER AUTHORITIES

*BitTorrent Litigation,* No. 2:11-cv-03999(E.D.N.Y. May 1, 2012)............................................1

California Restatement (Second) of Torts ...........................................................................18

Communications Decency Action §230 ................................................................... passim

California Copyright Act §301 ................................................................................. passim

California Copyright Act §505 ................................................................................................5

Digital Millennium Copyright Act ........................................................................................12

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976

U.S.C.C.A.N. 5659, 5746............................................................................................7, 8

Restatement (Second) of Torts, §314(a).............................................................................18

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

# I.  INTRODUCTION

The website for the Northern District of California (www.cand.uscourts.gov/wifi) states that the district "is pleased to announce that free wireless public internet access is now available to persons doing business with the court in all Northern District court locations…Wi-Fi makes it possible for users to connect to the public internet using the wireless technology used in most laptops.  If users are able to connect to a typical home or business Wi-Fi system, they can connect to the court Wi-Fi."

Providing free WiFi access to the Internet was undoubtedly welcomed by judges, attorneys, clerks, and court users of all types.  According to the Plaintiff's negligence claim against Mr. Polan, however, the Northern District now has a duty extending to the producers of adult entertainment and Plaintiff herein, to monitor and secure the Northern District's WiFi connection in such a way that no one can connect to the network to commit a copyright infringement.  Plaintiff's position imposes a substantial burden on the Northern District, especially since the Northern District obviously has intentionally offered unsecured Wi-Fi access that can be used by anyone, including those who wish to commit copyright infringement.

While the Terms of Use for the Northern District WiFi connection prohibit infringing use, the fact is that the connection is available to the public and has no mechanism to prevent infringing use. Luckily for the Northern District (and millions of Americans), Plaintiff's theory lacks any legal precedent, is wholly unsupported by existing law and, as one judge has noted, "flies in the face of common sense."[1]

Plaintiff's negligence theory is, instead, the latest incarnation of the copyright trolling phenomenon that has swept through district courts across the country.  Certain features have become hallmarks of this brand of litigation.  First, Plaintiff files a single suit seeking the identities of scores or hundreds of unrelated individuals based on a generalized

---

[1] *In Re BitTorrent Litigation,* No. 2:11-cv-03999(E.D.N.Y. May 1, 2012)(Doc. 39 at pg. 5)("While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, this assertion flies in the face of common sense.")

1

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

allegation that each has "shared" one of the plaintiff's copyrighted works – usually a pornographic film with an obviously pornographic title.   In the instant matter, Plaintiff filed its complaint in *Pink Lotus Entertainment, LLC v. Does 1 – 46*, case number C-11-02263 HRL (hereinafter *Pink Lotus #1*) in the Northern District, San Jose Division, on May 6, 2011. (*Pink Lotus #1,* Doc. #2).

Next, the plaintiff seeks from the court an *ex parte* order for "early" or "limited expedited discovery", seeking the names, addresses, telephone numbers, etc. of each ISP subscriber associated with particular IP addresses.   This is typically accomplished by assuring the court in the original action that: (a) the joinder of scores or hundreds of individuals as Doe defendants is proper and Plaintiff intends to amend the complaint to include each; and, (b) that the requested expedited discovery will be sufficient to "fully identify" the defendants and serve each with process.

Plaintiff in the present matter adhered to this model.  In *Pink Lotus #1,* the original matter where Plaintiff obtained Defendant's identity, Plaintiff represented to the court that "Through the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully "identify"…each P2P network user suspected of violating Plaintiff's copyright." (*Pink Lotus #1,* Doc. #6, pg. 3, lines 9 – 12.)

In *Pink Lotus #1* an Order granting leave to take expedited discovery issued on June 11, 2011 (*Pink Lotus #1,* Doc. #8).  Plaintiff then issued a subpoenas on Mr. Polan's ISP through the United States District Court for the Northern District of Illinois; requiring any effort to quash the subpoena to be brought in Illinois. Similar subpoenas were issued to the ISP's for the other Doe defendants.

After obtaining the identity of each subscriber via the subpoenas, the Plaintiff then sends letters to each account holder demanding thousands of dollars to settle its claims, and threatening to sue the subscriber for $150,000 if the subscriber fails to pay the settlement demand.  As Plaintiff well knows, a subscriber's decision to settle is often wholly unrelated to whether or not the subscriber infringed a copyright; rather, the decision is based on a desire to avoid the legal expense and embarrassment of trying to establish one

is innocent of downloading pornography.

The final phase in these mass copyright actions is, typically, a slow death.  Here, Plaintiff never amended its complaint in *Pink Lotus #1* to name any Doe defendant.  One Doe defendant, appeared anonymously as "Yolanda P." and moved to quash the subpoena to her ISP on August 4, 2011. (*Pink Lotus #1,* Doc. #12)  The motion hearing was twice continued. On October 5, 2011The Perkins Coie law firm filed an appearance on behalf of Yolanda P. (*Pink Lotus #1,* Doc. #26.)  Eight days later Plaintiff filed its Notice of Voluntary Dismissal without prejudice of the entire action. (*Pink Lotus #1,* Doc. #27)

That dismissal is consistent with the fact that Plaintiffs rarely take these matters to trial.  The district courts have started to refuse requests for expedited discovery to Internet Service Providers except on an individual basis.  Indeed, Judge Otis D. Wright II of the Central District of California, in an Order on June 27, 2012 refusing to permit one subpoena for the ten Doe defendants, stated: "The federal courts are not cogs in a plaintiff's copyright-enforcement business model.  The Court will not idly watch *what is essentially an extortion scheme*, for a case that plaintiff has no intention of bringing to trial." (*Malibu Media, LLC v. John Does 1 through 10*, Case No. 2:12-cv-3623 – ODW, Doc. #7, pg.6, lines 18-20). (Emphasis added.)

## II.  FACTUAL BACKGROUND

In early August 2011, Plaintiff obtained Mr. Polan's name and contact information by subpoena on his ISP.  On August 16, 2011, Plaintiff's counsel sent Mr. Polan a letter demanding $3400 to settle its claims and enclosed a settlement package that included a two-page document titled "Frequently Asked Questions," a payment authorization form, and a sample "release."  Plaintiff's counsel called Mr. Polan on October 21, 2011, and left voice mails on October 27, 2011 and November 8, 2011seeking settlement of Plaintiff's claims.

The instant action was initiated on November 21, 2011 with the filing of a complaint naming only "John Doe" (Docket Doc. #2).  The first paragraph of that complaint identifies Mr. Polan as the ISP account holder.

Plaintiff's counsel sent Mr. Polan a letter dated December 5, 2011 requesting

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

"informal discovery pursuant to the Northern District of California Local Rules" (sic) and stating that Plaintiff had "commenced our informal discovery efforts in relation to the above-referenced case." The letter identified the suit naming John Doe as the only defendant. Plaintiff continued to contact Mr. Polan directly, seeking settlement, including at least three phone calls after Mr. Polan filed his Answer on July 13, 2012.  Mr. Polan received calls on June 21, 22, 25, and July 11, 16, 17 and 18, 2012. At least two were made by individuals; the rest were calls from an automated system urging contact with Plaintiff's counsel.

Although Mr. Polan had not been named as a party, and thus had not yet appeared in this case, the Court entered a Scheduling Order on the March 19, 2012 (Docket Doc. #11).  That Order provides, in relevant part:

> I.      SERVICE OF PROCESS
>
> This action was filed against a John Doe defendant and plaintiff has thus far failed to identify or serve a named defendant. *Plaintiff shall have until May 18, 2012, to identify and effect service upon a named defendant.* Except as so provided, *no further service is permitted without leave of court*, good cause having been shown under Federal Rule of Civil Procedure 16(b).
>
> II.      JOINDER OF PARTIES/AMENDMENTS
> No further joinder of parties *or amendments to pleadings* will be permitted except with leave of court, good cause having been shown under Federal Rule of Civil Procedure16(b). See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992). [Emphasis added.]

On May 31, 2012, *without* seeking leave of court, Plaintiff filed its First Amended Complaint ("FAC") naming Mr. Polan in a single count. He was not served until more than two months after the Scheduling Order cut-off date.  *The docket contains no Order granting Plaintiff leave to amend or serve any party after May 18, 2012.*

The FAC names a single Doe defendant in the first three causes of action for Copyright Infringement and Contributory Infringement.  Only the Fourth Cause of Action, for Negligence, is directed to Defendant.

///

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

The pleadings in this matter establish that Plaintiff has no evidence that a particular subscriber actually committed copyright infringement. Plaintiff's counsel filed a declaration on January 30, 2012 in support of his application for leave to depose Mr. Polan before he was named in this action (Docket Doc. #9-1).   In paragraph 11 of his declaration counsel states: "At this time, the actual infringer in this case is unknown to Plaintiff." This puts plaintiff in a very awkward position, because actually suing people for infringement in this situation would violate Rule 11, as well as expose the Plaintiff to liability for costs and attorney fees under Copyright Act §505 when the defendant ultimately prevails.

Plaintiff's solution?   File the First Amended Complaint which accuses the account-holder of negligence – despite the fact that copyright negligence doesn't exist.   It is not important to Plaintiff that the negligence claim utterly lacks merit. It will serve the purpose of appearing to comply with the "Service of Process" portion of the Scheduling Order by naming a defendant.   More importantly, it perpetuates the suit and increases settlement pressure.   Defendant has been publically shamed, forced to retain counsel and incur significant costs to defend himself.   These are potent weapons for a Plaintiff seeking cost-of-defense settlements and threatening embarrassment to achieve that end.

For the reasons outlined more fully below, Defendant respectfully requests that this court dismiss Plaintiff's groundless negligence cause of action with prejudice because the defects in it cannot be cured by amendment.   Mr. Polan also asks that the Court prohibit further amendments naming Mr. Polan, and that the Court consider, in the context of Rule 11(c)(3), Plaintiff's failure to comply with the provisions of the Scheduling Order, as well as the absence of even colorable merit underlying the negligence claim.

### III. STATEMENT OF ISSUES TO BE DECIDED

1. Is Plaintiff's Negligence action against Defendant Polan preempted by Copyright Act §301 or the doctrines of conflict preemption or field preemption?

2. Is Defendant Polan entitled to immunity from suit under CDA §230 based on the allegations that he provided internet access to an unidentified individual who subsequently harmed Plaintiff?

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

3. Has Plaintiff alleged a sufficient factual basis regarding the existence of a duty to state a cause of action for negligence and survive dismissal under Fed. R. Civ. P. 12(b)(6)?

## IV. LEGAL  ARGUMENT

## A.  PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

A complaint may be dismissed under Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishion v. King & Spalding,* 467 U.S. 69 (1984) at 73.  A dismissal under this rule may be based on the failure to allege a cognizable legal theory, or by the failure to allege sufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530 (9th Cir. 1984) at 533-34.

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the Plaintiff.  *See Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940 (9th Cir. 2005) at 946.  Notably, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* (2009) 556 U.S. 662 at 678 (internal quotation marks and citations omitted).  *See also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

As such, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim are not entitled to a presumption of truth."  *Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009) at 969.  When a complaint fails to adequately state a claim, this fact should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atlantic v. Twombley,* 550 U.S. 544 (2007) at 556 As discussed below, Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted because it's negligence claim is preempted by § 301 of the Copyright Act,

6

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

because Defendant is immune from the alleged liability under §230 of the Communications Decency Act, and because the FAC is substantively insufficient to state a negligence claim under California law. Accordingly the complaint against Mr. Polan should be dismissed with prejudice under Rule 12(b)(6).

## 1.    PLAINTIFF'S NEGLIGENCE CLAIM IS PREEMPTED BY THE COPYRIGHT ACT.

§ 301 of the Copyright Act provides:

> On and after January 1, 1978, **all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106** in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, **are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.**"

17 U.S.C. 301(a).(Emphasis added.)   Copyright Act preemption is extremely broad. The Northern District of California stated:

> While the language of section 301 is quite clear, Congress also reinforced its desire to sweep broadly in a report accompanying the legislation: 'The declaration … in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection.' H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746 (quoted in *Rosciszewski v. Arete Associates*, 1 F.3d 225, 232 (4th Cir. 1993).

> Thus, Congress has clearly indicated that state-law claims which come within **the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law … should be litigated only as federal copyright claims**. Id.

*Firoozye v. Earthlink Network*, 153 F.Supp.2d 1151(N.D. Cal. 2001) at 1121-22 (Emphasis added.)

The House Committee report goes on to note that "preemption of rights under State law is complete with respect to any work coming within the scope of the bill, even though the

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

scope of exclusive rights given the work under the bill is narrower than the scope of common law rights in the work might have been.  H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746.   The message is unmistakable: the rights granted by the Copyright Act must be vindicated within the confines of the Copyright Act and its jurisprudence.

The test for copyright preemption asks two essential questions.  First, do the claims fall "within the subject matter of copyright law?"  *Firoozye,* 153 F.Supp. 2d at 1121-22. Second, do the claims seek to "protect rights equivalent to any of the exclusive rights within the scope of federal copyright law?"  *Id.*  If the answer to these questions is yes, then Plaintiff's claims "should be litigated only as federal copyright claims."  *Id.*  In the instant case, the answer to each question is obviously affirmative, and Plaintiff's negligence cause of action against Steve Polan is therefore preempted by §301.

**A. Plaintiff's Claim is Within the Subject Matter of Copyright**

The first prong of the copyright preemption test asks whether the Plaintiff's claim is within the subject matter of copyright.  There can be no doubt that Plaintiff's claim herein, which is based on the unauthorized reproduction and distribution of Plaintiff's allegedly copyrighted work, is within the subject matter of copyright.  The Copyright Act describes the "Subject matter of copyright" as follows.  "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in a tangible medium of expression…Works of authorship include the following categories… (6) motion pictures and other audiovisual work."  17 U.S.C. §102.

As the House Committee report notes:

> "As long as a work fits within one of the general subject matter categories of sections 102 and 103 [sections 102 and 103 of this title], the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain."

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5748.

///

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

Thus, the first test for copyright preemption is satisfied whether or not the individual work at issue is deemed copyrightable, and is satisfied solely by virtue of the fact that the work is a motion picture, falling within the subject matter of copyright.  The work that forms the basis of Plaintiff's claim in the instant case qualifies as a motion picture, and thus is within the subject matter of copyright.  The first prong of the preemption test is satisfied.

**B.  Plaintiff Seeks to Protect Rights Identical to the §106 Exclusive Rights**

There can also be no doubt that Plaintiff's negligence claim against Steve Polan seeks to protect rights that are equivalent to the section 106 rights of reproduction, distribution, etc.  Plaintiff's complaint makes it abundantly clear the negligence claim against Defendant seeks to protect Plaintiff's copyrighted work from unauthorized copying and sharing.  This is precisely the role of copyright law.

Indeed, Plaintiff cannot formulate any statement of its right to relief without reference to its "exclusive rights" under the copyright act (See, e.g., First Amended Complaint, Pars. 63, 64, 67), or the violation of those rights by "copying and sharing" (e.g., Pars. 63, 64, 65, 67), or "interfered with Plaintiff's exclusive rights in the copyrighted video" (e.g., Pars. 63, 64, 67). One can only conclude, based on the allegations of the First Amended Complaint, that Plaintiff seeks redress for alleged violation of its exclusive rights under the Copyright Act in the subject video.

Plaintiff's own focus on its "exclusive rights" is particularly telling.  17 U.S.C. §106 is entitled "Exclusive Rights in Copyrighted Works," and lays out the familiar exclusive rights, including the right to distribute and the right to reproduce.  These are *precisely* the rights that Plaintiff claims were violated as a result of Mr. Polan's alleged negligence. Plaintiff is unable to formulate any version of the claim without reference to its "exclusive rights." Moreover, the over-arching act that triggers liability to Plaintiff (under Plaintiff's theory), is the unauthorized copying and sharing of Plaintiff's work by a third party.  This is exactly the situation that the twin doctrines of vicarious and contributory copyright liability have been developed to address.

///

The Ninth Circuit has adopted the "extra element" test to help determine whether the state law claim "seeks to protect rights which are qualitatively different from copyright rights. The state claim must have an 'extra element' which changes the nature of the action" in order to survive preemption *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973 (9th Cir. 1987) at 977. Many courts have addressed this issue and determined that negligence claims do not add the required "extra element" that qualitatively changes the nature of the action, and thus are preempted.  As the Central District of California stated:

> Because the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim. ***Moreover, recharacterization of the claim as one of 'negligence' does not add a legally cognizable additional element because a general claim for copyright infringement is fundamentally one founded on strict liability. The alteration of the required mental state does not add an 'additional element'*…** *Plaintiff's negligence claim is preempted by federal copyright law.*

*Dielsi v. Falk,* 916 F.Supp. 985 (C.D. Cal. 1996) at 992-993. (Emphasis added; internal citations omitted).  The court in *Dielsi* recognized that simply rephrasing a claim does not change the essential elements of the claim.  In the present case, the gravamen of Plaintiff's claim is that Defendant Polan's liable for the copyright infringement of John Doe – this is precisely the type of claim that is evaluated under the Copyright Act rubrics of contributory and/or vicarious liability.

In addition to the court in *Dielsi* , a number of other courts have found that negligence causes of action are preempted by copyright law and that the alteration of the required mental state does not add a legally cognizable extra element.  See, e.g. *Felix the Cat Productions v. New Line Cinema,* 2000 WL 770481 (C.D. Cal. April 28, 2000) ("Recharacterizing Plaintiff's copyright claim as one for negligence does not add an additional element");  *Watermark Publishers v. High Tech. Sys.,* 1997 U.S. Dist. LEXIS 22512 at fn. 15 (S.D. Cal. Jun 18, 1997) (preempting Plaintiff's negligence claim, and noting "The only possible basis for a duty to protect another from copyright infringement – if such a duty can exist – is in copyright law; thus the alleged existence of a duty is not an 'extra element'");  *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,* 713 F.Supp.2d 215

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

(S.D.N.Y. 2010) (negligence claim under either New York or Illinois law was properly preempted by Copyright Act §301); *Bridgeport Music, Inc. v. 11C Music, et. al.,* 154 F.Supp.2d 1330 (M.D. Tenn., 2001) (negligence claim preempted by Copyright Act despite elements of "duty" and "breach."); *Marvullo v. Gruner + Jahr AG & Co.,* 2001 WL 40772, at fn. 7 (S.D.N.Y. Jan. 17, 2001) (photographer's negligence claim simply restates copyright infringement claim); *Drum Major Music v. Young Money Entertainment,* 2002 WL 423350 (S.D.N.Y. Feb. 7, 2012) (negligence claim preempted by Copyright Act).

Further, Plaintiff's Prayer for Relief seeks in paragraphs 5 and 6 to hold Mr. Polan jointly liable with the Doe defendant for violation of Plaintiff's copyright and for attorney's fees, litigation expenses and costs.  The only apparent basis for an award of fees and costs would be the Copyright Act. To hold Mr. Polan jointly liable with the Doe infringer effectively imposes infringement liability on Mr. Polan without any infringement claim against him, and without liability under the Copyright Act.

Based on the foregoing, Plaintiff's negligence claim against Defendant is unquestionably preempted by Copyright Act §301.  The work at issue is a motion picture – certainly within the subject matter of copyright as defined by §102.  In addition, Plaintiff seeks to protect rights that are identical to the rights protected by Copyright Law as demonstrated by Plaintiff's inability to assert any right to relief without reference to these exclusive rights.  Because Plaintiff's sole claim against Defendant is preempted, the FAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failing to posit a cognizable legal theory entitling Plaintiff to relief.

### C.  Preemption Under Conflict and Field Preemption Doctrines

In addition to the obvious statutory preemption via §301, Plaintiff's claims are also subject to preemption under the non-statutory doctrines of federal preemption.  A state law cause of action is preempted not only by specific statute, like §301, but also when the Constitution or other federal legislation evidences an intent to fully occupy the field in question, or when there is a fundamental incompatibility between federal and state law.  Thus, when the state law "stands as an obstacle to the accomplishment and execution of

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

the full purposes and objectives of Congress", it is preempted.  See, *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691 (1984).

Here, the FAC seeks to impose liability on an ISP subscriber for providing internet access to someone who subsequently used that connection to infringe Plaintiff's copyright. However, holding an information conduit liable for the content of the information transmitted represents a fundamental conflict between Plaintiff's state law claim and the existing federal legislation, including the Digital Millennium Copyright Act ("DMCA"), the Copyright Act, and the Communications Decency Act ("CDA").

The Copyright Act, DMCA, and CDA all include carefully drawn liability limitations for mere intermediaries in the information transmission process, such as Defendant here. There is a substantial body of Copyright Act case law discussing the requirements for imposing secondary liability on a third-party that has not directly infringed a copyright.  This regime does not authorize the imposition of liability for "negligent infringement."

Also, as set out below, the CDA has broad immunity provisions designed to prevent the imposition of tort liability based on the communications of a third party.  Likewise, the DMCA includes several statutory "safe harbors," that are designed to shield third party intermediaries from copyright liability resulting from merely transmitting information.  Taken together, these legislative acts demonstrate Congress' desire to occupy the field with regard to third party liability for the electronic communications of another – communications that routinely cross state lines and defy state regulations.  As such, state regulation over this field is prohibited.

Further, Plaintiff's negligence cause of action directly conflicts with the copyright principles of secondary liability and the broad policies of an open internet underlying both the CDA and the DMCA.  Thus, Plaintiff's cause of action for negligence is also preempted under the doctrines of conflict preemption and field preemption.

**2.  PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY CDA §230 IMMUNITY.**

Assuming, arguendo, that Plaintiff's cause of action for negligence could survive preemption, Plaintiff's claims are nonetheless barred by Communications Decency Act

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

immunity under 47 U.S.C. §230.  Specifically, §230(c)(1) provides  that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. 230(c)(1).  The CDA goes on to state: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. 230 (e)(3).

A fundamental policy underlying §230 immunity is "to promote the continued development of the Internet and other interactive computer services and other interactive media," and to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §230(b)(1 & 2).  As the 4th Circuit recognized, the CDA was designed to "avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery.  *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997) at 330-331.

Although CDA immunity does not provide immunity from liability under *intellectual property laws*, Plaintiff's negligence claim *must not* be a claim under intellectual property laws if it is to survive preemption.  Courts have construed "immunity broadly, in the spirit of the CDA's stated purpose of promoting rather than impeding technology and Internet use." *Smith v. Intercosmos Media Group, Inc.,* 2002 WL 31844907 at fn. 3 (E.D. La. Dec. 17, 2002).

Courts must undertake a three-part inquiry to determine whether a defendant is eligible for CDA immunity.  The three parts are "(1) the defendant [is] a provider or user of an interactive computer service; (2) the cause of action treat[s] the defendant as a publisher or speaker of information; and (3) the information at issue [is] provided by another information content provider."  *Delfino v. Agilent Technologies, Inc.,* 52 Cal.3d 376 (6th Dist. 2007) at 389, quoting *Gentry v. eBay, Inc,* 99 Cal. App. 4th 816, (4th Dist. 2002) at 830.

As noted above, courts must first determine whether the defendant qualifies as a "provider…of an interactive computer service."  Although this phrasing conjures images of

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

13

traditional internet service providers, (i.e. Comcast or Time Warner), the CDA defines the term in a way that leaves no doubt that it would apply to the allegations against Mr. Polan. Specifically, §230(f)(2) defines an interactive  computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, **including specifically a service or system that provides access to the Internet…"** 47 U.S.C. 230(f)(2)(emphasis added).

Plaintiff accuses Mr. Polan of providing internet access to an individual who ultimately pirated Plaintiff's film.  This act, according to Plaintiff, is the sole basis of Defendant's liability.  The act of providing internet access to a third party, however, is **exactly** the type of activity that qualifies for CDA immunity as the provider of an interactive computer service because it is specifically included in the definition cited above.

Indeed, the California Court of Appeals examined almost precisely the same issue in *Delfino v. Agilent Technologies, Inc., supra.* The Plaintiff in *Delfino* sought to impose liability on Agilent Technologies based on Agilent's provision of internet access to a particular employee, who used that access to send allegedly threatening and defamatory emails. Plaintiff sought to impose liability on Agilent based on a theory of negligent infliction of emotional distress, based on allegations very similar to those made by Plaintiff in the present case.  Specifically, Plaintiff claimed that Agilent "was informed and knew that [the employee] was using its computer system" to commit torts against the Plaintiff.  Agilent claimed immunity under the CDA and the trial court confirmed.  On appeal, the 6th District Court of Appeal confirmed the grant of immunity and noted that "Agilent clearly meets the definition of that term under section 230(f)(2), in that it "provides or enables computer access by multiple users."  *Id.* at 806.  Another California case, *Kathleen R. v. City of Livermore,* 87 Cal.App.4[th] 684 (1st Dist. 2001) held that public libraries providing computers and internet access qualified them for CDA protection as the provider of an interactive computer service.

The conduct here that purportedly gives rise to liability is virtually identical to the conduct of the defendants in *Delfino* and *Kathleen R.*, providing internet access to a third

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

party.  As the courts in *Delfino and Kathleen R.* concluded, and as the language of §230 makes clear, a defendant whose liability is premised upon his ownership or control of "**a service or system that provides access to the Internet,**" qualifies as the provider of an interactive computer service, and satisfies the first requirement for CDA immunity.

The second requirement for CDA immunity is that the "the cause of action treat[s] the defendant as a publisher or speaker of information."  *Id.* at 805.  The California Supreme Court has held that the CDA makes no attempt to exclude pre-CDA "distributors" of information, and one who was characterized as a passive distributor is likewise entitled to immunity.  *Barrett v. Rosenthal,* 40 Cal.4th 33 (2006).

Moreover, although this element is couched in terms that are familiar to defamation suits, immunity under section 230 is not so limited.  *Kathleen R., supra, pp. 696 – 698.* Numerous courts have applied CDA immunity to defendants accused of a variety of torts beyond defamation, including nuisance, premises liability, misappropriation of right of publicity, and, relevantly, negligent failure to control a third party's online conduct.  See, e.g. *Kathleen R., supra*; *Carafano v. Metrosplash.Com, Inc.,* 339 F.3d 1119 (9th Cir. 2003); and *Doe v. America Online, Inc.*, 783 So.2d 1010 (Fla. 2001).  Indeed, several courts have specifically held that CDA immunity bars a Plaintiff's claim for negligence, like the one alleged herein.  See, e.g., *Doe v. MySpace, Inc.,* 528 F.3d 413 (5th Cir. 2008) (defendant immune from negligence liability); *Carafano v. Metrosplash, supra,* (same); *Barnes v. Yahoo! Inc.,* 2005 WL 30055602 at fn. 4 (D. Or. Nov. 8, 2005) (same); *Ben Ezra, Weinstein, & Co, v.  America On Line,* 206 F.3d 980(10th Cir. 2000) at 986 (CDA bars claims for negligence and defamation); *Doe II v. MySpace, Inc.,* 175 Cal.App.4th 561(2nd Dist. 2009) (negligence, gross negligence and strict product liability barred by CDA); *Zeran v. America Online, Inc., supra,* (CDA bars defamation liability).

The case of *Kathleen R.* is instructive.  In that case, Plaintiff attempted to hold the City of Livermore liable for allowing a twelve-year-old to access and download sexually explicit images from an internet connection in the public library onto a floppy disk that he brought with him.  The minor then allegedly took the floppy disk to another location where

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

he printed the pictures.  The California District Court of Appeals had no trouble determining that Plaintiff was attempting to hold the library responsible as the speaker or publisher of the explicit materials by virtue of the library's role as a conduit for internet service.  The court held that §230 immunizes "interactive computer service providers from liability for mere failure to 'restrict access to offensive material disseminated through their medium.'" *Id.,* at 692, quoting *Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C.1998) at 49.

The allegations against Mr. Polan are practically identical to those in *Kathleen R.* The plaintiffs attempt to impose liability on the basis of the defendant's providing internet access to a third party or third parties.  In each, the Defendant is accused only of being a conduit for objectionable material that was downloaded from a connection offered by the Defendant.  In each case, the defendant's liability is premised on a third party's use of the defendant's internet access to copy pornographic materials to a storage device for later use. Accordingly, like the City of Livermore in *Kathleen R.,* Mr. Polan is entitled to CDA immunity.

The final prong of the test for CDA immunity asks whether "the information at issue [is] provided by another information content provider."  *Delfino, supra* at 805.  The CDA defines an information content provider as the "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet…" 47 USC §203(f)(3).  In this case, it is clear that Mr. Polan is not the creator or entity responsible for the creation or development of the film at issue.  The First Amended Complaint does not allege that Mr. Polan is the creator or developer of the information at issue – Plaintiff's copyrighted work.  As such, Mr. Polan easily satisfies the third prong of the preemption test.

Plaintiff expressly seeks to impose liability on Mr. Polan based on his allegedly providing internet access to an unidentified individual who infringed the Plaintiff's copyright. Providing internet access to a third party, however, makes Mr. Polan the provider of an interactive computer service and entitles him to immunity under the CDA.  This immunity extends to all attempts to hold him liable for the allegedly tortious transmission of information from a third-party.  Thus, in addition to being substantively insufficient to state a negligence cause of action, and preempted under §301 of the Copyright Act, Plaintiff's

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

negligence claim against Mr. Polan is barred by his CDA §230 immunity.

### 3.   PLAINTIFF CANNOT ESTABLISH THE DUTY ELEMENT OF A NEGLIGENCE CAUSE OF ACTION

The elements of a cause of action for negligence in California (as elsewhere) include duty, breach, proximate cause, and damages.  See, e.g., *Artiglio v. Corning Inc.,* 18 Cal.4[th] 604 (1998) at 614.  "The threshold element of the existence of duty is a question of law to be resolved by the court." *Id.*

Plaintiff's alleges that Mr. Polan owed Plaintiff a duty to secure his internet connection to prevent infringement of Plaintiff's copyrights.  Plaintiff's entire negligence claim arises from Defendant's alleged failure to take particular steps – allegations of nonfeasance as opposed to misfeasance.  See, e.g., First Amended Complaint paragraph 59 ("… Polan breached that duty by failing to secure his Internet connection."); paragraph 60 ("… Polan's failure to secure his Internet access account, …, constitutes a breach of ordinary care …."); paragraph 61 ("… declined to monitor … use of his …connection ….").

The California Supreme Court has recognized a critical distinction between one who is accused of nonfeasance, rather than active misfeasance.  As it explained in *Weirum v. RKO General, Inc.,* 15 Cal.3d 40 (1975) at 49: "…misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e. defendant has created the risk.  Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention."  A defendant has no duty in situations of "nonfeasance" *unless* a "special relationship" exists which would give rise to such a duty.

As recognized by California courts and the Restatement (Second) of Torts, "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts §314 (1965).  A defendant only has a duty to take actions to protect a third party when some "special relationship" exists between the Defendant and the injured party.   §314(a) discusses these special relationships, which include common carriers, innkeepers, possessors of land in certain circumstances, and one who takes the custody of

17

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

another under circumstances that deprive the other of his normal opportunities for protection.  Restatement (Second) of Torts, §314(a).  Clearly, none of these relationships are alleged, or could even remotely apply to the present claims.

In *Davidson v. City of Westminster,* 32 Cal.3d 197(1982) the California Supreme Court endorsed this position in a case involving a police officer's duty, noting that "absence of duty is a particularly useful and conceptually more satisfactory rationale [for dismissal of the action] where, absent any special relationship between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance."  The *Davidson* Court went on to state that:

> As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.  Such a duty may arise, however, if (a) a special relationship exists between the actor and the third
>
> person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives the other a right to protection. *Id.* at 203 (Citations omitted.).

It is interesting to compare the actual duties owed by *police officers* to take affirmative action to protect unrelated third parties with the duties that Plaintiff claims are owed by Steve Polan, an ordinary citizen with an internet connection, to protect plaintiff from copyright infringement by a third party.  *Minch v. California Highway Patrol,* 140 Cal.App.4th 895 (3rd Dist. 2006) likewise examined the duty of police officers to protect unrelated third parties and the distinction between nonfeasance and misfeasance.  In *Minch,* the court observed:

> Plaintiff asserts that his law suit is based upon the CHP's misfeasance, not nonfeasance.  However, he has not identified specific conduct by which the officers created a risk of peril.  Rather, plaintiff's action is based on the generic claim that the officers did not adequately protect him from the risk of harm.  This claim is, in all significant respects, identical to the claim in *Mikialian,* where the court recognized the claim was one of nonfeasance and upheld a judgment of nonsuit for lack of any duty in tort.  *Minch, supra* at 909 (Citations omitted.)

The First Amended Complaint is based on generic claims that Mr. Polan failed to protect the Plaintiff from harm by unknown third parties, clearly an allegation of nonfeasance.  Because Plaintiff's claim is not based on malfeasance, Plaintiff must plead a

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

special relationship giving rise to a duty to protect Plaintiff from harm.   Plaintiff has not alleged any special relationship that would give rise to such a duty. Given what is alleged in against Mr. Polan in the First Amended Complaint, it is apparent that Plaintiff cannot plead the existence of a "special relationship."   Accordingly, the only Count against Mr. Polan in the First Amended Complaint Plaintiff fails to allege facts sufficient to demonstrate a duty to protect Plaintiff's interests or property, and cannot survive dismissal under Rule 12(b)(6).

## 4.    PLAINTIFF'S DUTY ASSERTIONS FAIL UNDER *IQBAL* & *TWOMBLEY*

Finally, Plaintiff's negligence claim against Mr. Polan is devoid of factual support and does not satisfy the federal courts' heightened pleading standards in the wake of *Bell Atlantic v. Twombley,* 550 U.S. 544 (2007)  and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff's negligence cause of action amounts to little more than a formulaic recitation of the elements of a negligence claim, along with general "defendant-unlawfully-harmed-me" accusations like those rejected in *Iqbal* & *Twombly.*

The clearest example of the First Amended Complaint's deficiencies arises with regard to the alleged duty owed by Defendant.  "[T]o state a negligence cause of action, the defendant must owe a duty of due care to the person injured, or to a class of persons of which the plaintiff is a member." *Valdez v. J. D. Diffenbaugh Co.,* 51 Cal. App. 3d 494 (4th Dist. 1975). Paragraph 59 of the First Amended Complaint is the only paragraph that alleges a legal duty owed by Mr. Polan to Plaintiff; to wit: ": "Defendant Polan had a duty to secure his internet connection."  (Docket No.13, par. 59)

This is *precisely* the "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice."  *Iqbal, supra, at 663, citing Twombly, supra, at 555.* This court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal, supra at 678.*

Plaintiff offers no factual or legal support for the (literally) unprecedented proposition that an ISP subscriber (ergo, *all ISP subscribers)* owe a duty to Plaintiff (and all other owners of intellectual property rights) to secure their internet connection to prevent copyright infringement.   The allegation that "Defendant Polan had a duty to secure his internet

19

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

connection" is the epitome of a legal conclusion couched as a factual statement, and is the only support for the proposition embodied within it.

This year the District Court for the District of Hawaii considered a negligence claim in the BitTorrent context and concluded:

> [A]llegations in the FAC are not sufficient to state a claim of negligence for a couple reasons.  First, nowhere in the FAC does Plaintiff assert any specified legal duty in connection with its negligence claim.  Further, Plaintiff has not cited, nor has this Court found, any case law with analogous facts from which the Court could conclude that the Defendants owed Plaintiff a general duty to secure their internet connections."

*Liberty Media Holdings v. Swarm,* No. 11-00262-DAE-RLP (Docket NO. 66 - Order Granting in Part and Denying in Part Defendant Hatcher's Motion to Dismiss…) (D. Haw. January 30, 2012).  See also, *Liberty Media Holdings v. Swarm…and Does 1-62,* (Docket # 3 & 4, Order on Ex Parte Application) (C.D. Cal. May 12, 2011). (On motion for expedited discovery, Court determined Plaintiff's negligence cause of action could not withstand a motion to dismiss.).

The First Amended Complaint offers nothing more than a threadbare assertion that Mr. Polan had a duty to secure his internet connection.  It is entirely devoid of facts supporting that assertion.  Thus, assuming, *arguendo,* that negligence is not preempted *and* that Defendant does not qualify for CDA immunity, Plaintiff's negligence cause of action must be dismissed as lacking sufficient factual basis to state a cause of action.  Because these defects cannot be cured by amendment, dismissal should be with prejudice.

## 5.   OTHER DISTRICT COURTS REJECT PLAINTIFF'S NEGLIGENCE THEORY

Mr. Polan files with this motion his Request for Judicial notice of the Orders of other District Courts that have considered the issues raised by this motion.  Copies of the Orders are attached as exhibits to the Request for Judicial Notice.

In *Liberty Media Holdings, LLC v Cary Tabora,* Case No. 12 Civ. 2234 (LAK) the Southern District of New York considered Tabora's motion to dismiss the same negligence claim.  In a July 9, 2012 Order (attached to Mr. Polan's Request for Judicial Notice; available on WestLaw: 2012 WL 2711381; also available through PACER, S.D.N.Y. Case No. Civ.

20

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

2234 Docket # 33) Judge Lewis A. Kaplan granted the motion, noting "The negligence claim suffers from at least two problems, each independently fatal to its survival. It is necessary, however, to discuss only the first."  Judge Kaplan then dismissed the negligence claim as preempted by Copyright Act §301.

More recently, in two actions brought in the Northern District of California by the same firm representing Plaintiff in this action, the negligence cause of action, which consisted of virtually the same allegations, verbatim, as Plaintiff's negligence cause of action against Mr. Polan, was dismissed with prejudice.

In *AF Holdings, LLC v. John Doe and Josh Hatfield*, Case No. C 12-2049 PJH, Judge Phyllis J. Hamilton, in an Order dated September 4, 2012, dismissed the negligence cause of action with prejudice because: (1) it failed to state a nonfeasance negligence claim; and (2) Copyright Act §301 preempts such liability.

In *AF Holdings, LLC v. John Doe and John Boston*, case number 5:12-CV-02048-EJD Judge Edward J. Davila, in an Order dated October 3, 2012 dismissed the negligence cause of action because: (1) Copyright Act §301 preempts such liability; (2) Mr. Boston was immune from liability under CDA §230; and, (3) the complaint failed to state a nonfeasance negligence claim.  Both Judge Hamilton and Judge Davila dismissed the negligence cause of action with prejudice because the defects in it could not be cured by amendment.

While these decisions are not binding on this Court, the reasoning of these courts on precisely the issues presented by Mr. Polan's motion bears consideration, as do the authorities relied upon by those courts in their Orders.

## IV.  CONCLUSION

Plaintiff's negligence cause of action fails to state a claim upon which relief can be granted.  Not only is it factually insufficient under *Iqbal* and *Twombly*, but also its allegations demonstrate that the cause of action is preempted under both the Copyright Act's §301 and federal preemption doctrine.  Further, Mr. Polan is immune from the alleged negligence liability by operation of CDA §230.

Most fundamentally, however, the FAC alleges Mr. Polan's nonfeasance as the basis

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

for his claimed negligence liability, but fails to allege facts demonstrating the existence of a "special relationship" between Plaintiff and Mr. Polan that would give rise to the alleged duty.   The FAC demonstrates Plaintiff and Mr. Polan are strangers with no pre-existing relationship. Absent a "special relationship," no duty arises in nonfeasance cases, precluding negligence liability as a matter of law.

Accordingly, the negligence cause of action fails to state a claim upon which relief can be granted. Given the nature of the defects, the FAC should be dismissed with prejudice as to Mr. Polan because these defects cannot be cured by amendment. Mr. Polan seeks an Order prohibiting Plaintiff from naming him again as a defendant in this matter.

Despite the decisions in *Tabora* and, particularly, *Hatfield* and *Boston* which involve the same law firm representing Plaintiff in this action, Plaintiff has persisted in pursuing its unfounded negligence claim.  In direct contravention of the Court's Scheduling Order, Plaintiff filed and served the FAC without leave of Court.  Given the lack of merit in the negligence cause of action, Mr. Polan seeks dismissal with prejudice and an Order precluding Plaintiff from naming him again in this action. Further, in light of Plaintiff's disregard of the Court's Scheduling Order requirements, Mr. Polan respectfully invites the Court to consider directing an Order to Show Cause to Plaintiff pursuant to Rule 11(c)(3).

DATED:  November 14, 2012              MURPHY, CAMPBELL, GUTHRIE & ALLISTON


                                       By:   /s/ J. Douglas Durham
                                             Mark A. Campbell
                                             J. Douglas Durham
                                             Attorney for Defendant STEVE POLAN

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings

MURPHY, CAMPBELL, GUTHRIE & ALLISTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings